DE LONGUEMERE *against* THE FIREMEN INSURANCE
COMPANY.

Insurance on
a vessel, "at
and from her
last *port* of
lading in the
province of
*Yucatan,* to
*NewYork.*"
The vessel
while taking
in her cargo
at *Augostura,*
in the pro-

THIS was an action on a policy of insurance on the brig *Sally,* dated 25th *September,* 1810, valued at the sum insured; "at and from her last port of lading in the province of *Yucatan,* to *New-York.*"

This cause was tried at the same time with the last cause, and there was the same evidence and the same proofs, offered and rejected; except that the *Sally* went from *Sisal* to *Augostura,* in

vince of *Yucatan,* which is an open *road,* was driven on shore, by a storm, and lost. It was held, that the term *port* must be understood in reference to the voyage described in the policy; and there being no regular ports or harbours in the province of *Yucatan,* that *Augostura* and such places are there called *ports;* and in reference to the contract, are to be considered as so understood by the parties, and that the insured were, therefore, entitled to recover for a total loss. See *ante,* p. 120.

1

ALBANY,
Jan. 1813.

DE LONGUE-
MERE
v.
PHŒNIX
INS. CO.

the province of *Yucatan*, having obtained a permit from the custom-house at *Merida*, to take in a cargo of logwood, and to sail from *Augostura* to *New-York*. *Augostura*, like *Sisal* and *Silam*, is an open road; and the *Sally* was anchored about a mile from the shore, on the 5th *October*, 1810, for the purpose of taking in her cargo, which was ready for her. She began to take in her cargo, by means of boats, under the inspection of a custom-house officer, and continued loading until the 19th *October*, when the wind began to blow hard, and during the night increased to a violent storm, which continued with a very heavy sea, until the 23d *October*, when the vessel, after losing her windlass by a heavy sea, parted her cable, and was driven on shore and lost.

The master of the *Sally* testified that *Sisal*, *Silam* and *Augostura* are called *ports*, by the custom-house officers, and others; and that there were no proper harbours on the coast of *Yucatan*, except for small vessels.

*Per Curiam.* The policy on this vessel was, " at and from her port of lading in the province of *Yucatan*, to *New-York*." She was at the port of *Augostura* in that province, receiving her return cargo, when she was lost. This was one of the usual and customary places for delivering and receiving cargoes, on the coast of *Yucatan*, and as much of a port as any other place of lading within the province. This case, therefore, comes precisely within the reasoning adopted in the former case, and the motion for a new trial ought also to be denied.